**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

WILLIAM POE, JR.;

     *Plaintiff*;       CASE NO. 19-10008

*v.*            DISTRICT JUDGE LAURIE J. MICHELSON
             MAGISTRATE JUDGE PATRICIA T. MORRIS

OGEMAW, COUNTY OF;
KAY NORMAN; and
BRIAN OSIER;

     *Defendants*.
_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS MOTION TO DISMISS AND FOR SUMMARY JUDGMENT (ECF No. 20)

**I.  Recommendation**

  Plaintiff William Poe, Jr., has brought a panoply of claims against Defendants Kay Norman, Brian Osier, and Ogemaw County stemming from alleged sexual misconduct. Before the Court is Defendants' motion to dismiss and for summary judgment. (ECF No. 20.) For the reasons below, I **recommend** that the Court **GRANT the motion IN PART**, **DENY the motion IN PART,** and *SUA SPONTE* **DISMISS** various claims under 28 U.S.C. § 1915. If this Report is adopted, the Court would:

- Reject Defendants' argument that Plaintiff failed to exhaust administrative remedies;

- Accept Defendants' argument that Plaintiff failed to show a physical injury under 42 U.S.C. § 1997e(e), and thus dismiss his claim for intentional infliction of emotional distress (IIED) but allow his Eighth Amendment claims to go forward;

- Find that the Ogemaw County Correctional Facility is not a party to the case, dismiss Ogemaw County because Plaintiff has failed to state a claim against it, and *sua sponte* screen and dismiss (under 28 U.S.C. § 1915) Plaintiffs' official-capacity claims against Norman and Osier;

- Reject Defendants' argument that Norman is entitled to qualified immunity but find that Osier is entitled to qualified immunity;

- Grant Defendants' motion to dismiss Plaintiff's statutory claim under 18 U.S.C. § 2243;

- Under 28 U.S.C. § 1915, *sua sponte* screen and dismiss Plaintiff's statutory claim under 34 U.S.C. § 30301(13)[1];

- Grant Defendants' motion to dismiss Plaintiffs' request for injunctive relief;

- Under 28 U.S.C. § 1915, *sua sponte* screen and dismiss Plaintiff's request for declaratory relief; and

- Reject Defendant's motion to decline exercising supplemental jurisdiction over Plaintiffs' state-law claims.

Therefore, if this Report is adopted, only Plaintiff's Eighth Amendment claim against Norman will remain.

## II.    Report

### A.    Facts

At the time of the alleged events, spanning from around March 7, 2017 until June 28, 2017, Plaintiff was jailed at the Ogemaw County Correctional Facility (Facility) which is a county jail that is not operated under the Michigan Department of Corrections (MDOC). (ECF No. 1, PageID.6, 8.) At the Facility, Defendant Norman worked in the

---

[1] Plaintiff cites 42 U.S.C. § 15601(13), but that section was reclassified to the cite listed above.

kitchen[2] and Defendant Osier was the jail administrator. (ECF No. 1, PageID.7.) According to the complaint, Norman successfully encouraged Osier to make Plaintiff a kitchen trustee "as she would keep an eye on me and be responsible." (ECF No. 1, PageID.8.) Having gotten Plaintiff into the kitchen, Norman revealed her amorous designs. (*Id.*) She grew "very touchy and started making sexual [gestures] towards" Plaintiff. (*Id.*) Ignoring multiple warnings to stop, Norman began "offering sexual[] favors using food products with Plaintiff Poe." (*Id.*) On one occasion in the dry food pantry, Norman "[g]rabbed Plaintiff[']s buttocks pulled him close slid her hand in front of plaintiff and rubbed across plaintiff[']s penis area. [A]t that time defendant stated 'nice, you know what a ol' lonely lady could do with that.'" (*Id.*) Plaintiff recoiled, pulling away and responding "'nothing cause its wrong and we'll get in trouble' and 'you need to stop.'" (ECF No. 1, PageID.9.)

Despite his protestation, the groping continued. (*Id.*) On another occasion, she pushed him against a rack, placed his hand on her breast (which she later exposed) and again fondled his genitals. (*Id.*) A few days later, while in the freezer, Norman once more groped Plaintiff's penis and propositioned him. (*Id.*) These occurrences were frequent, and Plaintiff's complaint notes that many have been left out of the statement of facts. (ECF No. 1, PageID.10.) During this period, Norman lavished Plaintiff with gifts. (*Id.*)

Plaintiff contends he sent Osier "multiple kites [*i.e.*, communications] thr[ough] the jail email system informing him they needed to talk." (*Id.*) Eventually they met and Poe informed Osier that Norman "is getting very friendly with her mouth and body language

---

[2] Plaintiff alleges she was the kitchen superintendent, but in her affidavit she denies having that title and instead claims to be a kitchen cook. (ECF No. 1, PageID.7; ECF No. 20, PageID.162-163.)

towards him and too touchy." (ECF No. 1, PageID.11.) This tale provoked guffaws from Osier, who responded, "'[L]isten she probably means no harm and if she was doing all this you not [*sic*] going to say your [*sic*] not enjoying it." (*Id.*) Turning to go, Osier stopped and said, "[Y]ou'll be fine[.] [N]ot the first inmate she's gotten fresh with." (ECF No. 1, PageID.12.) Osier then walked away and never pursued the matter. (ECF No. 1, PageID.11.)[3]

Plaintiff filed the present action in January 2019. (ECF No. 1.) He asserts the following claims: the County failed to properly train and supervise the employees and inmates at the Facility; Norman and Osier violated Plaintiff's Eighth Amendment claims (made applicable to the State by the 14th Amendment, which Plaintiff also cites), including that Osier failed to protect Plaintiff; "[t]he defendant" intentionally inflicted emotional distress (IIED); "Defendant" violated 34 U.S.C. § 30301(13); and 18 U.S.C. § 2243 was violated. (ECF No. 1, PageID.13-15.) He sues Norman and Osier in their individual and official capacities. (ECF No. 1, PageID.2.) Plaintiff requests declaratory, injunctive, and monetary relief. (ECF No. 1, PageID.16.)

---

[3] Defendants have provided numerous materials pertaining to these events. (ECF No. 20, PageID.95-446.) They will be referenced below as necessary. Plaintiff has asked the Court to strike various exhibits regarding his underlying criminal case because, he says, they were submitted simply to "downgrade Plaintiff[']s credibility." (ECF No. 22, PageID.452.) Exhibits to motions for summary judgment generally are not susceptible to motions to strike. *Berkley v. Deutsche Bank Nat'l Trust Co.*, No. 2:12–cv–02642–JTF–cgc, 2014 WL 1795828, *2 (W.D. Tenn. May 6, 2014). In any event, Plaintiff's concerns are not well grounded, as the Court cannot weigh the evidence or assess credibility. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

### B.   Standard of Review

#### 1.   Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint with regard to whether it states a claim upon which relief can be granted. When deciding a motion under this subsection, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007) (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

The Supreme Court has explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although Rule 8 "marks a notable and generous

departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth . . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

## 2.   Summary Judgment Standard

When a movant shows that "no genuine dispute as to any material fact" exists, the court will grant his or her motion for summary judgment. Fed. R. Civ. P. 56(a). In reviewing such motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). The non-movant cannot withhold evidence until trial or rely on speculative possibilities that material issues of fact will appear later. 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2739 (3d ed. 1998). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493.

### C.   Exhaustion of Administrative Remedies

#### 1.   Legal Background

The Prison Litigation Reform Act of 1995 ("PLRA") was passed in response to a "sharp rise in prisoner litigation in the federal courts." *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). The Act attempted to ensure that "the flood of nonmeritorious [prisoner civil rights] claims [did] not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 202 (2007). A "centerpiece" of the PLRA was the "invigorated" exhaustion requirement, *Woodford*, 548 U.S. at 84 (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)), which provides that "[n]o action shall be brought with respect to prison conditions under [§ 1983] . . . by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2000). Suits "brought with respect to prison conditions" include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

Exhaustion of administrative remedies requires that (1) no remedies currently remain available, and (2) the remedies that had been available to the prisoner were "properly" exhausted. *Woodford*, 548 U.S. at 93. Whether the remedies were properly exhausted depends on "[c]ompliance with the prison grievance process," not any rules defined by the PLRA. *Jones*, 549 U.S. at 218. In other words, "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

### 2.    Arguments and Analysis

Defendants attempt to sink Plaintiff's entire case by arguing that he failed to exhaust his administrative grievances at the Facility. (ECF No. 20, PageID.80-83.) Plaintiff's complaint purported to demonstrate exhaustion by referencing his kites to Osier and their subsequent conversation. (ECF No. 1, PageID.12.) But, according to Defendants, this discussion simply serves to show that Plaintiff failed to file an actual grievance pursuant to the Facility Rules and Regulations. (ECF No. 20, PageID.81.) To properly exhaust grievances, Defendants assert that the Rules and Regulations "explicitly state that if an inmate files a grievance it is to be done on a grievance form which will be forwarded to the Jail Administrator and if the inmate is not satisfied with the response, they may appeal." (ECF No. 20, PageID.82 (*citing* ECF. No. 20, PageID.207, 216).) Thus, Defendants

contend that even if Plaintiff properly filed an initial grievance, he admits he never appealed to the sheriff, as required for exhaustion. (*Id.*) As for the kites Plaintiff sent, "[t]here is also no issue of fact that Plaintiff's kites did not reference any complaints or grievance of sexual assault or misconduct." (*Id.*) The kites themselves lack any discussion of sexual misconduct, instead they simply asked to meet with Osier. (*Id.* (*citing* ECF No. 20, PageID.388-389).) Osier's affidavit avers that during the subsequent meetings the topic of sexual assaults never came up. (*Id.* (*citing* ECF 20, PageID.176-181).) Finally, Defendants note that, per Facility Rules and Regulations, an emergency button is located in every cell block that should be used by victims of sexual assault. (ECF No. 20, PageID.83 (*citing* ECF No. 20, PageID.196-212).)[4] Plaintiff does not allege he used these alternative methods that were "available to him if his allegations were true. It is obvious that they are not, and he failed to engage in the prerequisite exhaustion of remedies." (*Id.*)

I will start the analysis with Defendants' invocation of Rule 12(b)(6) as the vehicle for their argument. Apparently, Defendants thought that since Plaintiff's claims were unexhausted, they were "precluded by law" and therefore the "Complaint contains no claims upon which relief may be granted." (ECF 20 No. 20, PageID.83.) The failure to state legal claims does justify granting a Rule 12(b)(6) motion, but this logic misses other important points that make this type motion inappropriate for raising the exhaustion defense in this case. To begin, the "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in

---

[4] Defendants quote a specific provision in the Rules and Regulations but cite to the entire exhibit.

their complaints." *Jones*, 549 U.S. at 216. Thus, "because a plaintiff need not anticipate or plead around an exhaustion defense, that defense usually may not be addressed in a motion under Rule 12(b)(6) for failure to state a claim." *Anderson v. Jutzy*, 175 F. Supp. 3d 781, 786 (E.D. Mich. 2016) (*citing Jones*, 549 U.S. at 215).

This is not the rare case in which Plaintiff has pled himself out of court based on failure to exhaust. *See id.* The complaint alone does not admit or demonstrate that Plaintiff failed to exhaust grievances. It simply says he sent emails to Osier and then discussed the matter with him. (ECF No. 1, PageID.12.) For all the reader knows, that might be precisely what the Facility requires to exhaust a grievance. Nothing in the complaint indicates otherwise. The complaint does not reveal a failure to exhaust and thus was not hoisted by its own petard. It therefore cannot be said to have failed to state a claim.

It is only with the introduction of extra-pleading materials—the Rules and Regulations and Osier's affidavit—that Defendants attempt to prove Plaintiff flouted the grievance process. Such proof is commonly needed to carry exhaustion arguments. *Anderson*, 175 F. Supp. 3d at 787. But once those sources come in, we are no longer in Rule 12(b)(6) land. That is plain from the Rule itself: "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Before the court converts and decides the motion, however, the parties must have "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* Thus, by introducing outside materials that are necessary for resolving the exhaustion argument,

Defendants have raised an issue that must be decided via a Rule 56 summary judgment standards.

As for the opportunity to submit evidence, the parties have filed briefs upon briefs in this case, ending finally with Plaintiff's reply (ECF No. 29) to Defendants' reply (ECF No. 27) to Plaintiff's sur-reply (ECF No. 24.)[5] There is no indication that during this deluge of briefs, either side felt constrained in what it could introduce outside the pleadings. As a result, the parties have had a reasonable opportunity to submit evidence. Even if not, or if concerns about the lack of discovery exist, my recommendation below to deny the motion (regarding exhaustion) will enable both parties to continue assembling evidence and address the matter later. Under these facts, I cannot conclude that either side would be surprised by conversion or that any additional notice is required. *Cf. Wysocki. v. Int'l Business Machine Co.*, 607 F.3d 1102, 1105 (6th Cir. 2010). Addressing Defendants' motion under Rule 56 is therefore appropriate.

With the preliminaries settled, I turn to the merits. As noted above, to exhaust available administrative grievances, a plaintiff must comply with the prison's requirements. *Jones*, 549 U.S. at 218. The procedures Defendants rely on are found in the Facility's Rules and Regulations. (ECF No. 20, PageID.207.) That document leaves much to be desired:

Inmate Grievances (Kites)

---

[5] The local rules require a party to obtain permission to file a sur-reply. E.D. Mich. LR 7.1. No provision is made for further briefing after a sur-reply. Plaintiff never sought or obtained leave to file a sur-reply or any subsequent brief. While this rule violation gives grounds to ignore the briefs, Plaintiff's oversight can be excused because he is *pro se*. *See generally Hill v. Walker*, 2015 WL 5211919, at *8 (E.D. Mich. Aug. 31, 2015). Defendant received permission to file a response to Plaintiff's sur-reply.

> Inmates shall use the cobra kiosk to send a kite. Kites can be sent to the classification officer, kitchen, Nurse, Program Coordinator or the (lieutenant) Jail Administrator. A grievance form can be obtained from a C/O. Once it shall be forwarded directly to the (Lieutenant) Jail Administrator.

(*Id.*) The rule does not explain the difference between a kite and the grievance form. In particular, it does not demand that inmates file grievances only with the "form" rather than by "kite." The title indicates they are equivalent. The parenthetical insertion of "(Kites)" does not suggest that the paragraph is about both grievances *and* kites, as two separate processes: information placed in parentheses generally explains preceding material or is an aside of sorts. Bryan A. Garner, *Garner's Modern American Usage*, 909 (2009). It contains nonessential material. William A. Sabin, *The Gregg Reference Manual*, 52 (8th ed. 1996). Thus it would be strange if the inclusion of "(Kites)" in the title was meant to indicate that the paragraph addressed kites as a topic separate and wholly independent of grievances. And as a picayune matter, it would be especially disjointed for the title to organize the relevant topics as *first* grievances, *second* kites, only for the paragraph itself to unfold as *first* kites, *second* grievances.

On the other hand, kites are sent via a particular kiosk to certain individuals whereas the grievance form must be obtained (presumably physically) and sent to the Jail Administrator. In their brief, Defendants explain that "[k]ites are a means of electronic communication akin to emails which inmates can send to those identified in the Rules and Regulations and which can be responded to." (ECF No. 20, PageID.74, n.4.) No source is given for this assertion, let alone one coming from record evidence. Even so, it would be

odd if the Regulation was read to allow an inmate to send, by kite, a grievance to the kitchen or Nurse. But here Plaintiff sent the kites to Osier, the Jail Administrator who is also listed as the proper recipient of grievance forms. (ECF No. 20, PageID.388-389.)

Even more important, the Facility specifically listed Plaintiff's kites as "Grievance Type." (*Id.*) Why give that listing if the kites had no relationship to grievances? Was it a matter of mere administrative convenience? Defendants' silence on this point is one of the reasons they do not merit summary judgment.

Their silence also reflects other lacunae in the Regulation itself. It does not establish what topics must be grieved. It does not require any level of detail in the grievance, nor does it prohibit the inmate from filing a grievance that simply asks to talk to the jail administrator. It does not say when the grievances must be filed (although of course the Facility is free to refrain from imposing deadlines). In fact, it does not even mandate that inmates with gripes file grievances at all.

A comparison with the Michigan Department of Correction's (MDOC's) grievance process is instructive. Under the MDOC's policy, various topics are defined as grievable issues. MDOC PD 03.02.130(F) (eff. 3/18/2019). A prisoner "shall attempt to resolve the issue" with the relevant staff member within two days of becoming aware of it and if no resolution is reached the prisoner "must" file a formal grievance within five days after the attempt at informal resolution. MDOC PD 03.02.130(Q). The prisoners "shall" use specific forms at each of the three steps in the process. MDOC PD 03.02.130(S).Thus, under the MDOC policy—but not the Facility's—grievants with specific issues are instructed to file

a particular form with specific information in a definite time period in order to air their problems.

Defendants make much of Plaintiff's failure to appeal any grievance to the Sheriff. (ECF No. 20, PageID.81-82.) But that is another point on which the Rules are silent. Nothing in the grievance provision mentions an appeal, let alone requires one. The grievance "form" Defendants provide has a space for "Appeal to Sheriff or Designee," but the form itself nowhere requires an appeal. (ECF No. 20, PageID.216.) Readers of the form might gather that they should appeal to the sheriff, but they are not directed to appeal nor informed how to do so. Nor are any consequences imposed for failing to appeal. Consequently, the appeal procedure has not been made an essential part of the grievance process.

Compounding these problems, as Plaintiff points out, (ECF No. 22, PageID.448), is that the Rules elsewhere suggest that Plaintiff followed the proper path by sending kites and following up by verbally reporting his allegations. Under the title "Self-Protection," the Rules specifically state that "[a]ny consensual or non-consensual touching, stroking, patting of oneself or others or any connotation of sex should be verbally reported to any staff member and also should be reported using the kiosk kite system." (ECF No. 20, PageID.196-197.) That is precisely what Plaintiff did, sending a kite through the kiosk system and following up with Osier. Immediately after the "Self-Protection" provision, the Rules give the procedure for "Reporting Sexual Assaults": the inmate should utilize an emergency button in every cell block and also "should verbally report this [*i.e.*, the assault] to any staff." (ECF No. 20, PageID.197.)

14

The "Self-Protection" and "Reporting Sexual Assaults" provisions expressly apply to assaults involving staff. (ECF No. 20, PageID.196.) Further, the Facility's Policies and Procedures defines "sexual assault" to include "any sexual act or contact between an employee . . . and an inmate." (ECF No. 20, PageID.353.) "Sexual contact," in turn, encompasses "intentional . . . touching, or physical contact in a sexual manner, either directly or through clothing, of the genitalia, anus, groin, breasts, inner thighs, or buttocks; with or without the consent of the person; or any unwanted touching with intent to arouse, humiliate, harass, degrade, or gratify the sexual desire of any person." (*Id.* (emphasis removed).) As such, the passages on sexual assault applied to Plaintiff's allegations against Norman. And again, Plaintiff appears to have adhered to this procedure by contacting Osier.[6]

Neither the Rules nor the Policies required the kites to mention the basis for the grievance. Thus, I am unconvinced by Defendants' contention that the kites do not discuss

---

[6] Defendants observe that Plaintiff does not allege using the emergency button. (ECF No. 20, PageID.83.) But they do not suggest this means Plaintiff failed to exhaust his grievances. Rather, to them, "it demonstrates that there were other remedial measures available to him if his allegations were true." (*Id.*) In other words, they use the failure to *allege* pressing the button as evidence that his claims are untrue. But taking this argument on its own terms means weighing the evidence and Plaintiff's credibility, which the Court cannot do. *See Anderson*, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). Nor am I convinced that Defendants' contention has any merit to the extent they mean to imply that the lack of allegations regarding the emergency button shows non-exhaustion. For one thing, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Moreover, while the emergency buttons are in every cell block, it is unclear whether they are also available in the kitchen where the sexual contact allegedly occurred. If not, the buttons would have been unavailable to Plaintiff, and thus it would have been unnecessary to utilize them in order to satisfy the grievance requirements. *See Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016) (noting that under 42 U.S.C. § 1997e(a) "[a] prisoner need not exhaust remedies if they are not 'available'"). Even if Plaintiff had access to a button in his cell, as Defendants argue, (ECF No. 23, PageID.459), he still could not have used it "immediately," as the Rules require, (ECF No. 20, PageID.197). At the very least, then, a question of fact would exist regarding the availability of the buttons.

15

the sexual abuse—nothing expressly required them to. (ECF No. 20, PageID.86-87.) So it would be sufficient if Plaintiff verbally divulged the sexual abuse after sending the kites. Osier's affidavit states that this topic never came up during his meetings with Plaintiff. (ECF No. 20, PageID.178-179.) Defendants also produce other evidence in an effort to discredit Plaintiff's allegations. (ECF No. 23, PageID.463 (describing the conclusions of a police report as summarized in an affidavit).) But Plaintiff's verified complaint states that he did discuss the matter with Osier. (ECF No. 1, PageID.11-12.) A party's verified complaint can "controvert sworn affidavits and place into issue material facts." *Williams v. Browman*, 981 F.2d 901, 904 (6th Cir. 1992) (discussing 28 U.S.C. § 1746). Thus, a classic factual dispute has emerged on this point. To the extent it could be argued that Plaintiff's statements to Osier were too vague—he said Norman had been "too touchy"—I would disagree. The Policies provision for "Self-Protection" includes "[a]ny . . . non-consensual touching." (ECF No. 20, PageID.196.) And nothing in the Policies or Rules require an inmate to articulate the grievance in any particular level of detail. *Cf.* MDOC PD 03.02.130(S) (requiring dates, places, times, names, and all issues sought to be grieved).

In their final brief, (ECF 27, PageID.517), Defendants argue that Plaintiff has admitted to ignoring the grievance process because his sur-reply states that "[w]riting a grievance is irrelevant to this case" and that, according to his reading of the Defendants' materials, the sexual assault reporting requirements "<u>ARE</u> separate from the grievance procedure." (ECF No. 24, PageID.488.) But these statements simply serve to show that Plaintiff was attempting to follow the appropriate process to exhaust his issue. This was

not an unreasonable reading of the Rules and Policies, for the reasons discussed above. Other correctional facilities exclude complaints of sexual abuse outside the grievance process. *See, e.g.*, MDOC PD 03.02.130(D). Regardless of the reasonability of Plaintiff's beliefs, his subjective understanding and characterization of the procedures cannot control how the Court reads them.

Caselaw supports the conclusion that Plaintiff has satisfied these vague grievance procedures. To be clear, I do not suggest that the procedures are so vague as to render the grievance process "unavailable" to Plaintiff, thus absolving him from his duty to exhaust grievances. *See Ross*, 136 S. Ct. at 1859. To reach that result, the process must be "essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands." *Id.* (citation omitted). There is no reason to go that far here. Instead, it is enough to note that Plaintiff plausibly fulfilled the requirements laid out before him, despite gaps and silence in the Rules. "[W]hen a reasonable policy is in place, but is silent or vague in a particular circumstance, courts must look to see whether the prisoner has attempted to satisfy the requirements of the policy." *Napier v. Laurel Co., Ky.*, 636 F.3d 218, 223 (6th Cir. 2011); *cf. Ross*, 136 S. Ct. at 1859 ("When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion.").[7]

---

[7] In *Miller v. Shah*, the procedure involved submitting a complaint form. 2011 WL 2672257, at *2 (S.D. Ill. June 8, 2011). The court noted that there was no timeline provided or appeals process specified and concluded that the "grievance procedure is deficient," thus rejecting the exhaustion defense. *Id.* at *4. Unlike the present case, however, it was unclear in *Miller* whether the inmate ever received notice of the procedure. *Id.* Still, *Miller* lends support for the proposition that policies like the present one are in some sense deficient.

Here, Plaintiff did not "[do] nothing." Instead he sent kites in the manner suggested by the Rules' grievance provision and the Policies' self-protection provision. The kites were received and labeled as "Grievance Type" by the Facility. (ECF No. 20, PageID.388-389.) He contends that he then verbally conveyed his complaint to Osier, which is what the Policies' guidance on self-protection and sexual abuse require. Given these efforts, and the gaps in the procedures, Defendants have not met their burden of showing Plaintiff failed to exhaust his grievances.

In sum, the grievance procedures are sufficiently unclear that it cannot now be determined Plaintiff failed to follow them. From all that appears, he complied with the steps necessary to exhaust grievances. Consequently, I cannot conclude that Defendants have met their burden of demonstrating that Plaintiff failed to exhaust.

### D.    Physical Injury under 42 U.S.C. § 1997e(e)

Plaintiff's next argument is that Plaintiff has failed to allege a physical injury as required by 42 U.S.C. § 1997e(e). (ECF No. 20, PageID.83.) Before detailing the argument, I note that Defendants once again invoke Fed. R. Civ. P. 12(b)(6) as the basis for judgment. This time, however, their argument goes to the legal adequacy of Plaintiff's claims. Thus, although Defendants continue to pepper their contentions with extra-pleading materials, *see, e.g.*, (ECF No. 20, PageID.84 (citing a health report)), the motion need not be converted to a Fed. R. Civ. P. 56 motion. The citations to documents outside the pleadings (which include attached written instruments, Fed. R. Civ. P. 10(c)) will be ignored unless the Court can take proper judicial notice of them, Fed. R. Evid. 201.

That statute Defendants rely on states:

18

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

42 U.S.C. § 1997e(e).[8] According to Defendants, Plaintiff's claims for mental or emotional injuries must be dismissed because his complaint "does not contain any plausible allegation that he was physically injured." (ECF No. 20, PageID.84.) It is true that Plaintiff's complaint does not specify any physical injuries apart from the sexual contact itself.

This issue breaks down into two questions. First, do Plaintiff's allegations of sexual contact amount to a physical injury or sexual act under 42 U.S.C. § 1997e(e)? If so, then Plaintiff's claims for mental and emotional injuries can go forward. If not, however, a second question arises: do any claims survive?

The answer to the first question is to be found by interpreting the terms "physical injury" and "sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e). The latter, unlike the former, is statutorily defined and I will begin with it. Under the cross-referenced statute, "sexual act" means:

(A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;

(B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

---

[8] In 2013, the statute was amended to add the phrase "or the commission of a sexual act (as defined in section 2246 of Title 18)." *See* Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4, § 1101, 127 Stat. 54 (Sexual Abuse in Custodial Settings) (2013). Defendants quote the pre-amendment version, which leaves out a critical portion of the statute. (ECF No. 20, PageID.84.)

19

(C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

(D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

18 U.S.C. § 2246(2). That statute goes to define "sexual contact," a different term not encompassed in § 1997e(e)'s cross-reference but relevant nonetheless. The definition of "sexual contact" is the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3).

Putting this all together, an inmate evades § 1997e(e)'s bar by alleging and proving a "sexual act," which essentially means oral or anal intercourse, penetration, or direct touching of the genitals of persons under 16 years old. As such, the statute "preclude[s] those over the age of 16 who have suffered harm because of 'sexual [contact],'" as defined in 18 U.S.C. § 2246(3), "from filing suit under the PLRA to gain compensatory damages for mental and emotional injuries." Hannah Belitz, Note, *A Right Without a Remedy: Sexual Abuse in Prison and the Prison Litigation Reform Act*, 53 Harv. C.R.-C.L. L. Rev. 291, 295 (2018). Here, this means Plaintiff's allegations of sexual touching do not amount to a "sexual act" under § 1997e(e). To satisfy § 1997e(e), then, Plaintiff's allegations must constitute a "physical injury."

As noted, the term "physical injury" is not defined in the statute. The caselaw has not provided a definitive interpretation of the term. A recent technical definition of "physical injury" is "[p]hysical damage to a person's body." *Black's Law Dictionary* (10th ed. 2014).[9] The Sixth Circuit has noted that "[a]lthough § 1997e(e) does not define 'physical injury,' the developing case law in this area reflects the view that, consistent with Eighth Amendment jurisprudence, the predicate injury need not be significant, but must be more than de minimis." *Adams v. Rockafellow*, 66 Fed. App'x 584, 586 (6th Cir. 2003). In applying this definition, the court found that a strip search did not result in physical injury where the inmate failed to allege any such injury. *Id.*

The Sixth Circuit has elsewhere focused on the physical damages or issues an inmate experienced due to the alleged conduct. In *Styles v. McGinnis*, the inmate underwent a rectal examination that he alleged caused "increased blood pressure, chest pain, tachycardia, and numerous premature ventricular contractions." 28 F. App'x 362, 364 (6th Cir. 2001). This was enough to survive a motion to dismiss, according to the Sixth Circuit. *Id.*

Other courts, before the 2013 amendments adding "sexual act" to § 1997e(e), interpreted "physical injury" to include sexual contact that would arguably not meet the definition of "sexual act" in 18 U.S.C. § 2246(2). *See generally* Belitz, *supra*, 53 Harv. C.R.-C.L. L. Rev. at 303-304 (discussing the caselaw). As one court bluntly stated,

---

[9] This matches nicely the plain meanings of both terms: "physical" means "[o]f or relating to the body," and "injury" means "[h]urt or loss caused to or sustained by a person or thing; harm, detriment, damage." *Oxford English Dictionary* (online ed.).

"unwanted sexual contact, alone, is a physical injury for which there may be compensation." *Duncan v. Magelessen*, 2008 WL 2783487, at *4 (D. Colo. July 15, 2008). Although the Second Circuit did not describe in detail the alleged conduct in *Liner v. Goord*, it appears that the inmate had complained of "intrusive body searches without 'therapeutic supervision.'" 196 F.3d 132, 135 (2d Cir. 1999). The court thought this conduct "qualif[ies] as physical injuries as a matter of common sense." *Id.* In a similar vein, allegations (vaguely described in the opinion) of rape and sexual assault were deemed sufficient to state a claim, as these were "latent with the notion of physical injury." *Nunn v. Michigan Dep't of Corrections*, 1997 WL 33559323, at *4 (E.D. Mich. Feb. 4, 1997). In another case arising before the 2013 amendment, the court determined that caressing buttocks and the lower stomach, stroking genitalia, and striking the genitals were all considered physical injuries under § 1997e(e). *Marrie v. Nickels*, 70 F. Supp. 2d 1252, 1257, 1264 (D. Kan. 1999).

Other pre-amendment decisions came out the other way, indicating that bare sexual contact would not constitute physical injury under § 1997e(e). In a short footnote, one court stated that a "single incident of fondling reported by [one plaintiff] and the physical contact [also fondling] reported by [another defendant] might not satisfy the statutory requirement" of a physical injury. *Castillo v. Bobelu*, 1 F. Supp. 3d 1190, 1211 n.1 (W.D. Ok. 2014). Another court found that grabbing genitals and unsuccessfully attempting oral sex was not a physical injury. *Carrington v. Easley*, 2011 WL 2119421, at *1, *3 (E.D. N.C. Feb. 8, 2011); *see also Jones v. Price*, 696 F. Supp. 2d 618, 625 (N.D.W.V. 2010) (no physical injury for humiliating strip search).

The same split persisted after the 2013 changes to the statute. A few courts have held that sexual contact that does not meet the definition of "sexual act" in 18 U.S.C. § 2246(2) is nonetheless a physical injury for purposes of § 1997e(e). In *Morton v. Johnson*, the defendant fondled plaintiff's breast and genitals. 2015 WL 4470104, at *1 (W.D. Va. July 21, 2015). The court noted that several decisions had "found that intentional, unwanted sexual touching can show a sufficient 'physical injury' to authorize compensatory damages for the inmate's resulting mental and emotional distress." *Id.* at *7 (citations omitted). Agreeing with these decisions, the court noted that this approach reflected Eighth Amendment standards that barred *de minimis* harms but only if the physical force used was not contrary to "contemporary standards of decency." *Id.* at *8 (*citing Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Fondling an inmate did contravene those standards, and thus the court determined the plaintiff had properly alleged a physical injury. *Id.* There was no discussion of the 2013 amendments.

A similar case is *Cleveland v. Curry*, 2014 WL 690846 (N.D. Cal. Feb. 21, 2014). The allegation there was that the defendant grabbed and squeezed the plaintiffs' genitals during clothed-body searches. *Id.* at *1. Citing some of the same caselaw above, as well as Ninth Circuit precedent suggesting that proof of injury was unnecessary as long as the alleged offense offended human dignity, the court found "that prisoners who establish that they were sexually assaulted by correctional officers in violation of the Eighth Amendment have established that their injuries are more than de minimis under the PLRA." *Id.* at *7. Explaining this conclusion, the court first noted that sexual assault might not "cause objective and observable physical injuries, but any type of sexual assault is 'always' deeply

offensive to human dignity." *Id.* Further, as a matter of "common sense, it would be illogical to allow guards who (through happenstance or planning) assault prisoners without leaving observable physical injuries to escape liability under the PLRA because they have only caused phycological, emotional, dignitary and other injuries." *Id.* Consequently, the injury sufficed for the physical-injury requirement under § 1997e(e). *Id.* Again, the 2013 amendments went unaddressed. *See also Oxendine-Bey v. Harihan*, 2015 WL 5331809, at *6-7 (E.D.N.C. July 22, 2015) (finding that fondling genitals is a physical injury but not addressing the 2013 amendments).

Other post-2013 decisions have rejected classifying sexual contact as a physical injury. Allegations of "sexual touching/fondling" were found insufficient in *Woods v. United States*, 2015 WL 9947694, at *2 (N.D. Ala. Dec. 11, 2015). The court's analysis focused on the amendments. The allegations did not amount to a "sexual act" under § 2246(2) but instead constituted "sexual contact" per § 2246(3). *Id.* at *3. "Because § 1997e(e) specifically requires a physical injury or the conduct defined as a 'sexual act,' as found in § 2246(2), 'sexual contact' as described in § 2246(3) is insufficient to support a claim for damages" under the Eighth Amendment. *Id.*

The conclusion in *Woods* was echoed in *Mengesha v. Stokes*, which dealt with similar allegations of sexual touching short of penetration. 2017 WL 5632668, at *3 (N.D. Fla. Nov. 22, 2017). The court recognized that prior to 2013, some courts had classified these acts as a physical injury. *Id.* at *8 (citations omitted). But "[t]he 2013 amendment . . . . clarified the specific actions which permit a prisoner to bring a claim for mental or emotional injury for a sexual assault absent physical injury." *Id.* at *9. The allegations of

24

groping, however, met the definition of "sexual contact," not "sexual act," and therefore were insufficient under § 1997e(e). *Id.*

I am convinced by the reasoning that lies behind *Woods* and *Mengesha*. In adding "sexual act" to § 1997e(e), Congress selected a specific definition that excluded "sexual contact." Had Congress wished to include the latter term, it certainly could have done so. And it is difficult to believe that Congress considered "sexual contact" to be already encompassed by the term "physical injury" and thus extended § 1997e(e) to "sexual acts." The term "sexual act" includes more egregious conduct—involving penetration, intercourse, or touching of youths—than that covered by "sexual contact." Consequently, it is hard to envision how "physical injury" could have, in Congress's estimation, already included "sexual contact" but not "sexual acts." In other words, if the concept of "physical injury" is broad enough to include "sexual contact," it is undoubtedly broad enough to also include "sexual acts." As such, extending "physical injury" to include the type of conduct under "sexual contact" would effectively render superfluous the 2013 amendment's addition of "sexual act." That latter term would do no work under such an interpretation. Courts must strive to avoid interpretations that fail to give effect to all statutory provisions. *See Corley v. United States*, 556 U.S. 303, 314 (2009).

There are other textual reasons to decline interpreting "physical injury" to include bare allegations of sexual touching. The above definition of "physical injury" focuses not on the act itself, but its effects. *Black's Law Dictionary* (10th ed. 2014). It would not make sense to say, for example, that a tap on the head *was* the physical injury. Instead, the tap may have caused a physical injury, but it does not constitute the injury itself. Of course,

some conduct so obviously causes injury that merely alleging it occurred suffices to show physical injury. For instance, an allegation that the plaintiff was run over by a steamroller clearly encompasses physical injury—damage to the body. But no matter how abhorrent and emotionally damaging, mere sexual touching does not without more suggest bodily damage. That is why, it seems, the Sixth Circuit in *Adams* focused on the physical effects of the sexual touching. 66 Fed. App'x at 586. Thus, if the touching results in physical injury, § 1997e(e) will not bar relief; but the touching itself is not the physical injury.

Here, Plaintiff has not alleged any physical injury apart from unwanted touching. His conclusory allegation that he suffered "personal injury and physical injury and pain" is not enough to plausibly plead a physical injury under § 1997e(e). *See, e.g.*, *Graham v. Orozco*, 2010 WL 2720609, at *2 (C.D. Cal. July 7, 2010) (conclusory complaints of physical injury do not sufficiently plead a physical injury for purposes of § 1997e(e)'s requirements). Plaintiff's response brief—which is not part of his pleadings, Fed. R. Civ. P. 7(a)—lists various mental and emotional consequences of the sexual abuse, including depression and feelings of helplessness. (ECF No. 22, PageID.451.) The closest he comes to presenting a physical injury is claiming he has trouble sleeping. (*Id.*) But sleeplessness is not generally considered a physical injury under § 1997e(e). *See Stanley v. United States*, 2012 WL 6924168, at *2 (N.D. Va. Oct. 24, 2012) ("Applying [§] 1997e(e), courts have consistently rejected claims of anxiety and stress, as well as physical manifestations associated with emotional distress, such as . . . sleeplessness to establish a physical injury."). Because there is no allegation of physical injury, and the touching does not constitute a "sexual act," Plaintiff has failed to meet § 1997e(e)'s requirements.

26

This conclusion, however, does not end Plaintiff's case. Even Defendants recognize that the application of § 1997e(e) simply bars "Plaintiff's claims for mental and emotional injuries." (ECF No. 20, PageID.87.) Indeed, Sixth Circuit precedent holds that violations of constitutional rights are "themselves injuries, apart from any mental, emotional, or physical injury that might also arise from the deprivation, and that § 1997e(e) does not bar all relief for injuries" to these rights. *King v. Zamiara*, 788 F.3d 207, 212 (6th Cir. 2015). In *King*, the constitutional violation was to the plaintiff's First Amendment rights. *Id.* The court, however, provided an interpretation of § 1997e(e) that should apply here. Analyzing the statute, the court noted that most circuits "embrace a broad view of the PLRA's statutory language and conclude that, regardless of the underlying constitutional violation, if the plaintiff fails to allege physical injury, § 1997e(e) bars compensatory damages." *Id.* at 213. This interpretation was incorrect, according to the Sixth Circuit, because the statute "says nothing about claims brought to redress constitutional injuries, which are distinct from mental and emotional injuries." *Id.* Continuing, the court stated that "[w]ere we to construe § 1997e(e) as the majority of courts have done, thereby grafting a physical-injury requirement onto claims that allege First Amendment violations as the injury, the phrase 'for mental or emotional injury' would be rendered superfluous." *Id.* Avoiding that interpretation, the court held that "the plain language of the statute does not bar claims for constitutional injury that do not also involve physical injury." *Id.* (*citing Robinson v. Page*, 170 F.3d 747, 748 (7th Cir. 1999)).[10]

---

[10] In an earlier, unpublished decision, the Sixth Circuit had found that "absent injury related to the strip search, [the plaintiff's] Eighth Amendment claim is not cognizable under § 1997e(e)." *Jackson v.*

The holding is broad enough to encompass all constitutional injuries, and thus cover the present case addressing an Eighth Amendment claim. As one district court in this Circuit explained:

> While *King* is a First Amendment case, the Court did not indicate that the outcome in an Eighth Amendment case should be any different. In fact, in support of the Court's assertion that the "plain language of the statute does not bar claims for constitutional injury that do not also involve physical injury," the Court cites to a Seventh Circuit case holding that a physical injury is not required for a prisoner to bring an Eighth Amendment claim.

*Richardson v. Bauman*, 2015 WL 5347557, at *2 (W.D. Mich. Sept. 14, 2015). As *Richardson* observed, *King* relied on a Seventh Circuit case involving an Eighth Amendment claim. There, the plaintiff claimed that high lead levels in the prison drinking water violated his Eighth Amendment rights. *Robinson*, 170 F.3d at 748. As in *King*, the court explained that § 1997e(e) "is applicable only to claims for mental or emotional injury. It has no application to a claim involving another type of injury." *Id.* Consequently, the plaintiff's Eighth Amendment claim gave "the court . . . no occasion to consider the meaning of the statutory term 'physical injury.'" *Id.*

The court in *Robinson* went on to explain that only the claims for mental or emotional suffering needed to be dismissed; the claim for damages for the constitutional injury could proceed. *Id.* at 748-749. Or, as the D.C. Circuit explained, "if . . . the prisoner claimed mental anguish in addition to the substantive constitutional violation, then the first

---

*Herrington*, 393 F. App'x 348, 354 (6th Cir. 2010) (discussing similar holdings in *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008); *Adams*, 66 F. App'x at 586). The court, however, specifically declined to decide whether the constitutional claim could proceed despite the absence of physical injury because the underlying claim would lose on the merits in any event. *Id.* at 354 n.6. Thus, even aside from their unpublished status, these prior decisions are not controlling.

claim would be barred while the second [*i.e.*, the substantive constitutional claim] would be eligible for compensatory damages." *Aref v. Lynch*, 833 F.3d 242, 263 (D.C. Cir. 2016); *see also Bryant v. Newland*, 64 F. App'x 58, 59 (9th Cir. 2003) ("[Plaintiff's] claims for nominal, compensatory, and punitive damages premised on deliberate indifference to his safety, and not on any alleged mental or emotional injuries, are not barred by 42 U.S.C. § 1997e(e). . . . However, his claims for mental and emotional injury are barred due to a lack of physical injury."). *Aref* further noted that every circuit—"regardless of its interpretation of [§] 1997e(e)"—permits nominal damages for constitutional violations even if no physical injury is shown, and many circuits also allow punitive damages in those circumstances. *Aref*, 833 F.3d at 266; *see, e.g.*, *Ashley v. Perry*, 2015 WL 9008501, at *6 (M.D. La. Dec. 15, 2015) ("Because Plaintiff concedes that he did not suffer a physical injury arising from the alleged sexual assault upon which he bases his constitutional claims, he cannot recover compensatory damages. . . . The Fifth Circuit has recognized, however, that a prisoner may recover nominal or punitive damages, despite a lack of physical injury, if he can successfully prove a constitutional violation under 42 U.S.C. § 1983 and overcome a defense of qualified immunity."); *see generally* Eleanor M. Levine, Note, *Compensatory Damages are Not For Everyone: Section 1997e(e) of the Prison Litigation Reform Act and the Overlooked Amendment*, 92 Notre Dame L. Rev. 2203, 2211-2214 (2017) (discussing the circuit split).

In light of this caselaw, it is evident that the logic if not the plain holding of *King* applies to this case. Therefore, Plaintiff's Eighth Amendment claim is unaffected by his failure to plead a physical injury. By contrast, claims for mental and emotional damages

cannot survive. This conclusion creates a wrinkle that the parties have not addressed: whether § 1997e(e) applies to Plaintiff's state-law IIED claim. If it does, that claim should be dismissed because it is premised solely on emotional injury. *See Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 597-598 (1985) (describing the elements of an IIED claim); c*f. Scott v. United States*, 2019 WL 3082422, at *4 (N.D.W.V. July 15, 2019) (dismissing a state-law IIED claim under § 1997e(e) for lack of physical injury).

Some courts have read § 1997e(e) to apply only to federal claims because the statutory language bars a "federal civil action" absent a showing of physical injury. *See, e.g.*, *Albrecht v. Williams*, 2009 WL 3296649, at *27 (D. N.J. Oct. 13, 2009) ("'W]hile some courts have interpreted [§ 1997e(e)] to apply to state law claims as well as federal claims,' . . . this Court does not believe that 'this is the correct reading of the statute.'" (*quoting Mercado v. McCarthy*, 2009 WL 799465, at *2 (D. Mass. Mar. 25, 2009))); *Bromell v. Idaho Dep't of Corrections*, 2006 WL 3197157, at *5 (D. Id. Oct. 31, 2006) (noting the text and holding that "[a]ccordingly, Plaintiff may proceed with this cause of action as a state law claim under the Court's supplemental jurisdiction").

I agree, however, with the contrary view ably described in *Jacobs v. Penn. Dep't of Corrections*, 2011 WL 2295095, at *23-24 (W.D. Penn. June 7, 2011). The rationale is that a "Federal civil *action*," the phrase used in the statute, is different from a federal civil *claim*, and thus the statute applies to all claims (federal or state-based) in the *action*. *Jacobs* explained as follows:

> The court interprets the plain meaning of the term "Federal civil action" to mean an action in which civil claims over which the federal court has jurisdiction are brought, i.e., all claims over which the court has original

> jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction under 28
> U.S.C. § 1367. The definition of the word "action" is distinct from that of a
> "claim." As defined in Black's Law Dictionary, an action is defined as "[a]
> civil or criminal judicial proceeding.—Also termed *action at law*."
> BLACK'S LAW DICTIONARY 32 (9th ed. 2009). In contrast, the definition
> for a claim is narrower, i.e., "a demand for money, property, or a legal
> remedy to which one asserts a right; esp., *the part of a complaint in a civil
> action* specifying what relief the plaintiff asks for." *Id.* at 282 (emphasis
> added).

*Id.* at 23. Numerous cases were cited as agreeing with this analysis. *Id.* Although the

caselaw remains split remains, *see Cryer v. Spencer*, 934 F. Supp. 2d 323, 340 n.15 (D.

Mass. 2013), courts since *Jacobs* have held that § 1997e(e) bars state-law claims. *See, e.g.*,

2015 WL 6405976, at *16 (N.D. Fla. Sept. 21, 2015). Indeed, one court wrote that "[m]ost

courts that have considered the issue, have found that § 1997e(e) applies to state law claims

that are brought in a federal action." *Beaulieu v. New Hampshire Governor*, 2018 WL

5830848, at *4 (D. N.H. Nov. 7, 2018).

Under the logic of *Jacobs*, I conclude that § 1997e(e) applies to Plaintiff's IIED

claim. Because Plaintiff has not demonstrated a physical injury, the IIED claim is barred.

However, for the reasons above, Plaintiff's Eighth Amendment claim can proceed.

### E.    Liability of Ogemaw County and the Facility

Next, Defendants argue that Ogemaw County and the Facility must be dismissed

from the case because Plaintiff has failed to plead or prove that they established any policy

or custom authorizing the violation of Plaintiff's constitutional or statutory rights. (ECF

No. 20, PageID.89.) Indeed, municipal entities like the County and the Facility cannot be

held vicariously liable under § 1983 for the acts of their agents. *Monell v. Dep't of Soc.

Servs. of City of New York*, 436 U.S. 658, 691-692 (1978). Instead, to sue such

municipalities, "a plaintiff must prove that the deprivation occurred pursuant to a municipal 'policy or custom.'" *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013) (*quoting Meyers v. City of Cincinnati*, 14 F.3d 1115, 1117 (6th Cir. 1994)). A "policy" can be demonstrated by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers." *Monell*, 436 U.S. at 690. A "custom," by contrast, is a practice "has not been formally approved by an appropriate decisionmaker [but] may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Co. Comm'rs of Bryan Co., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

"One way to prove an unlawful policy or custom is to show a policy of inadequate training or supervision." *Harvey v. Campbell Co., Tenn.*, 453 F. App'x 557, 562 (6th Cir. 2011) (citation omitted). "To succeed on a failure-to-train claim, a plaintiff must prove the following: (1) the training was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Thames v. City of Westland*, 310 F. Supp. 3d 783, 800 (E.D. Mich. 2018). But "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). The municipal policymakers must have notice of gaps in their training programs such that the failure to remedy them demonstrates deliberate indifference. *Id.* "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (citation omitted).

32

Here, for starters, it is not even clear that Plaintiff intended to sue the Facility or the County. The former is neither listed in the caption as a defendant nor identified as one in the body of the complaint, which includes a breakdown of the named defendants. (ECF No. 1, PageID.1, 2, 6, 7.) The court docket likewise does not include the Facility as a party. Consequently, the Facility is not a party to the lawsuit and therefore need not be dismissed.

The title page of his complaint does name the County as a defendant, and the County appears in the Caption and docket as well. (ECF No. 1, PageID.1, 6.) However, the County does not show up in the complaint's list of defendants in the body of the allegations. (ECF No. 1, PageID.2, 7.) Generally, the caption does not alone determine whether a plaintiff names an individual or entity as a party, and instead courts must decide whether the complaint's substantive allegations clearly demonstrate the plaintiff's intent. *See Burley v. Quiroga*, 2019 WL 4316499, at *15-19 (E.D. Mich. June 6, 2019), *rep. & rec. adopted by* 2019 WL 3334810 (E.D. Mich. July 25, 2019).

Very little is said about the County in Plaintiff's complaint, except for the statement that they failed to properly train and supervise its employees. (ECF No. 1, PageID.13.) Assuming that this assertion, along with the caption, suffices to designate the County as a defendant, Plaintiff has not pleaded or presented evidence of any County policy or custom that resulted in his rights being violated. The bare accusation that the County failed to train or supervise its employees is not enough. It addresses the training program in the most conclusory fashion, failing to allege how the unspecified inadequacies led to the deprivation of Plaintiff's rights.

33

Plaintiff attempts to demonstrate a pattern of violations by citing *McInyre v. Ogemaw Co. Bd. Comm'rs*, an earlier case involving the Facility, but that case centered on accusations against a particular county agency that allegedly controlled the county sheriff's department and the actions at issue were a commanding officer's sexual assault of female inmates in a work program. No. 15-12214, slip op. at *2 (E.D. Mich. Sept. 15, 2016). (ECF No. 1, PageID.11.) Thus, that case dealt with different agencies and departments and does not establish a pattern of failing to train jail staff. Plaintiff also mentions rumors of sex between an officer and a female inmate at the Facility, (ECF No. 1, PageID.11), but that single incident would fall short of constituting a practice that plausibly demonstrated the County's deliberate indifference to known (or knowable) gaps in training or supervision.

As such, Plaintiff has not stated a viable § 1983 claim against the County or produced evidence demonstrating a question of fact concerning the County's liability. Therefore, the County should be dismissed.

Because his claim against the County fails, his official-capacity claims fail too. This is because an official capacity suit is equivalent to a suit against the municipal entity. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (citation omitted)). In an "official-capacity action, . . . a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation." *Id.* at 166 (citation omitted). "[T]hus, in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Id.*

34

Here, for the reasons above, Plaintiff has failed to state any claim regarding a policy or custom. Thus, his official-capacity claims fail. Although Defendants' have not asked for dismissal on this basis, the Court can screen these claims under 28 U.S.C. § 1915(e) because Plaintiff proceeds *in forma pauperis*. That statute allows a court to *sua sponte* dismiss actions that fail to state a claim. 28 U.S.C. § 1915(e)(2)(B)(ii). Accordingly, I recommend the Court *sua sponte* dismiss the official-capacity claims. *Cf. Keenan v. Bowker*, 2019 WL 2410845, at *2 (N.D. Ohio June 7, 2019) ("Here, Keenan fails to assert any allegations regarding a policy or custom of Trumbull County that purportedly caused the claimed violation of his constitutional rights, which is necessary to state a claim against Defendants in their official capacities. The Court is not required to conjure allegations or construct claims on Plaintiff's behalf. Having failed to state a plausible § 1983 official capacity claim against any of the Defendants, this action is dismissed pursuant to § 1915(e).").

### F.   Qualified Immunity

Defendants also claim qualified immunity. (ECF No. 20, PageID.89-91.) "The doctrine of qualified immunity shields officials from civil liability so long as their conduct '"does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citations omitted). As such, once the defense is raised, Plaintiff bears the burden of demonstrating that the defendant official (1) violated a statutory or constitutional right, and (2) "the right was clearly established at the time of the challenged conduct." *Jacobs v. Alam*, 915 F.3d 1028, 1039 (6th Cir. 2019) (*quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 735

(2011)). The facts are to be "viewed in the light most favorable to the plaintiff[.]" *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005).

### 1.    Defendant Norman

Defendants' entire argument regarding Norman is that, "with no complaints of her conduct to her or anyone else by Plaintiff, there can be no implication of any unlawful conduct." (ECF No. 20, PageID.90-91.) The contention is so skeletal that it flirts with waiver. *See McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (citation omitted)). Assuming that Defendants have done enough to present an issue, I am unpersuaded on the merits. The gist of the argument appears to be that Plaintiff cannot prove, as a factual matter, any of his allegations against Norman. Presumably this relates to the first prong in the qualified-immunity test.

While Defendants do not cite it here, they present and discuss elsewhere evidence that could be assembled to support their factual contention. These materials include an affidavit from a Facility nurse who examined Plaintiff and asked him whether he had been sexually assaulted, which he denied. (ECF No. 20, PageID.152.) Also contained with their motion is Norman's affidavit, which denies the allegations, and a time card showing she worked on May 21, (ECF No. 20, PageID.163, 166), contradicting Plaintiff's claim she was off that day and called in to harass him, (ECF No. 1, PageID.10). Letters from Plaintiff to Norman do not contain complaints of sexual abuse. (ECF No. 20, PageID.168-170.) An affidavit from a fellow prisoner who worked as a trustee in the kitchen states that Plaintiff never mentioned sexual abuse, (ECF No. 20, PageID.172-173), potentially contradicting

36

Plaintiff's claim that he told another trustee of the abuse, (ECF No. 1, PageID.10). Finally, Defendants attach the affidavit of Doug Cassleman, an officer with the sheriff's department, who says he investigated the matter and "concluded that Plaintiff's complaint is could [*sic*] not be substantiated." (ECF No. 20, PageID.404.)

In sum, the evidence Defendants offer shows that the accused denies the claims, the police thought they were ungrounded, and the alleged victim of sexual abuse did not blather about it to others in the jail. Against this evidence is Plaintiff's verified complaint alleging sexual abuse. As noted, those statements can be used to controvert the opposing side's evidence. *Williams*, 981 F.2d at 904. Consequently, I cannot say that no genuine dispute exits regarding the constitutional violation.

This leaves the legal side of the qualified-immunity inquiry, *i.e.*, whether Plaintiff's evidence shows a violation of a clearly established constitutional right. Because Defendants have wholly failed to address this aspect of the issue, I will not belabor the analysis. Plaintiff claims that Norman's sexual abuse violated his Eighth Amendment rights. (ECF No. 1, PageID.13-15.) The Eighth Amendment prohibits "unnecessary and wanton infliction of pain," which includes punishments "that are 'totally without penological justification.'" *Rafferty v. Trumbull Co., Ohio*, 915 F.3d 1087, 1093-1094 (6th Cir. 2019) (citations omitted). "To make out a claim under the Eighth Amendment, the prisoner must satisfy both an objective component." *Id.* at 1094 (citation omitted).

> "The objective component requires the pain inflicted to be 'sufficiently serious.'" . . . As the Supreme Court has state, "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" . . . Rather, the Eighth Amendment Protects prisoners only from conduct which is "repugnant to the conscience of mankind." . . . The objective

component of the Eighth Amendment "is a 'contextual' inquiry that is 'responsive to contemporary standards of decency.'" . . .

The subjective component requires that the prison official act with a "sufficiently culpable state of mind." . . . In some instances, the subjective prong of an Eighth Amendment claim is satisfied by a showing of deliberate indifference, such as in cases concerning medical care, conditions of confinement, or abuse perpetrated by an inmate against another inmate. . . . In other contexts, such as when a prisoner alleges excessive force, the subjective component requires a heightened showing that the prison official acted "maliciously and sadistically for the very purpose of causing harm."

*Id.* (citations omitted).

It is well established—and was at the time of the events here—that "sexual abuse is sufficiently serious to violate the Eighth Amendment." *Id.* at 1095. The Sixth Circuit's recent decision in *Rafferty v. Trumbull Co., Ohio*, is illustrative both of the subjective and objective components and also of the state of the law when the alleged abuse here occurred. In that case, a prisoner guard ordered a female inmate to exposer her breasts on three or four occasions and to masturbate on one or two occasions. *Id.* at 1091. No physical contact was ever made with the inmate. *Id.* The court had no problem finding that the plaintiff inmate satisfied both components of the Eighth Amendment, and thus rejected the defendant's qualified-immunity argument. *Id.* at 1095-1096. Regarding the objective test, the court noted that the allegations were sufficiently serious, and were unlike the "isolated, brief, and not severe" conduct that does not give rise to an Eighth Amendment claim. *Id.* at 1095 (citation omitted). The fact that it occurred up to six times was enough, and the lack of touching was not fatal because the abuse "entailed forced sexual acts." *Id.* As for the subjective component, the Court noted that it had "not determined whether deliberate indifference or the heightened malice standard is required to satisfy the subjective

38

component of an Eighth Amendment claim alleging sexual abuse by a prison guard." *Id.* at 1096. That question remained for another day because the defendant's conduct satisfied either standard. *Id.* "Obviously, [the defendant] could not conceivably offer a legitimate penological justification for his" actions. *Id.* Moving to the second part of the qualified-immunity test, the Court determined that the relevant rights were clearly established as of 2014. *Id.*

*Rafferty* directs the outcome in the present case. The alleged abuse occurred on multiple occasions and involved exposing a breast, rubbing Plaintiff's penis, propositioning Plaintiff, and giving him gifts to cajole him into sex. No penological motives are evident in this behavior. There is, for example, no suggestions the touching was incident to a search. And these events took place in 2017, at a time when the law clearly prohibited this conduct. Defendants have offered no argument to the contrary. Consequently, Norman is not entitled to qualified immunity regarding the Eighth Amendment claims.

### 2. Defendant Osier

The story is different for Osier, however. The nature of the Eighth Amendment claim against him is that he failed to protect Plaintiff from Norman's abuse. The objective prong for such claims requires a showing "that the failure to protect from risk of harm is objectively 'sufficiently serious.'" *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (citation omitted). Deliberate indifference is the standard for the subjective prong. *Id.* "An official is deliberately indifferent if he or she 'knows of and disregards and excessive risk to inmate health or safety; the official must both be aware of the facts from which the

inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.'" *Id.* at 766-767 (*quoting Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Taking the evidence as Plaintiff presents it, Osier lacked the deliberate indifference necessary to sustain Plaintiff's failure-to-protect claim. Plaintiff's verified complaint states he told Osier that Norman "is getting very friendly with her mouth and body language towards him and too touchy." (ECF No. 1, PageID.11; *see also* ECF No. 1, PageID.12 ("Plaintiff stated to Brian Osier that Norman has been very free with her mouth and very touchy.").) Nothing in that statement informed Osier that Plaintiff had been, or was in danger of being, sexually abused in violation of his Eighth Amendment rights.[11] Osier's response demonstrates that he did not understand that sexual abuse was occurring. He stated, "You'll be fine not [*sic*] the first inmate she's gotten fresh with." (ECF No. 1, PageID.12.) To be "fresh" informally means "being too confident and showing no respect, or showing by your actions or words that you want to have sex with someone." *Cambridge Dictionary* (Online ed.). Thus he may have believed Norman was behaving inappropriately, but Osier did not understand that Norman had acted on her impulses; nor could he have reasonably interpreted Plaintiff's statement as suggesting otherwise. Consequently, Plaintiff's own description of events fails to show that Osier acted with deliberate indifference. Osier is therefore entitled to qualified immunity.

### G.     Dismissal of Plaintiff's Statutory Claims

---

[11] This conclusion is consistent with the determination above that Plaintiff's statements were enough to exhaust his grievances. Recall that the Facility's grievance procedure does not establish a minimum level of detail the grievance must include.

Plaintiff's action, brought under 42 U.S.C. § 1983, alleges that Defendants violated various statutory rights along with the Eighth Amendment. (ECF No. 1, PageID.6, 13-15.) Defendants ask that one of those claims, under 18 U.S.C. § 2243, be dismissed for failing to claim. (ECF No. 20, PageID.93.) They do not mention the second statutory claim, under 34 U.S.C. § 30301(13). Nonetheless, for the reasons that follow, I suggest both should be dismissed.

Each of Plaintiff's statutory claims must be addressed through the procedural vehicle he presents them in, 42 U.S.C. § 1983, which "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-394 (1989) (*quoting Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Section 1983 therefore is a procedural mechanism providing a remedy for the deprivation of rights created by other statutes. *See Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("[T]he § 1983 remedy broadly encompasses violations of federal statutory as well as constitutional law."). The key, however, is that underlying statute must "give[] rise to a federal right." *Blessing v. Freestone*, 520 U.S. 329, 340 (1997). To provide a right, "Congress must have intended that the provision in question benefit the plaintiff." *Id.* This inquiry is akin to determining whether the statute implies a private right of action. *Doe v. Broderick*, 225 F.3d 440, 448 (4th Cir. 2000). In both inquiries, the court is "required to determine whether Congress has created a right that can be enforced." *Id.*

The first statute Plaintiff cites,18 U.S.C. § 2243(b), criminalizes "sexual act[s]" with any person who is "in official detention." By its terms, Plaintiff cannot rely on this provision. For one thing, it utilizes the definition of "sexual act" discussed above, *see* 18

41

U.S.C. § 2246(2), and the allegations here do not fit that definition. Additionally, an individual is "in official detention" if he or she is detained by or in the custody of federal officers or employees, or if federal officers or employees are directing the detention or custody of the individual. 18 U.S.C. § 2246(5). Plaintiff does not meet this definition either, as he was detained in a county jail. There is no indication that his detention was orchestrated by federal actors. Thus, even if the statute provided a federal right that could be enforced through § 1983, he would be unable to bring that claim.

Alternatively, nothing in 18 U.S.C. § 2243 evinces congressional intent to create a privately enforceable right. *See Lampon-Paz v. Dep't of Justice*, 2019 WL 2098831, at *7 (D. N.J. May 14, 2019) (noting that § 2243 is a criminal statute that does not create a private right of action). Most notably, it is a criminal statute and such legislation rarely serves as a source of private rights. *See Doe*, 225 F.3d at 447 ("The Supreme Court historically has been loath to infer a private right of action from 'a bare criminal statute.'" (*quoting Cort v. Ash*, 422 U.S. 66, 80 (1975))). While § 2243 concerns a particular class—individuals held in custody by federal authorities—the statute no more creates rights in favor of this group than the criminal statute at issue in both *Ellison v. Cooke Co, Tenn.*, 63 F.3d at 470-472 (6th Cir. 1995) and *Chapa v. Adams*, 168 F.3d 1026, 1038 (7th Cir. 1999), that prohibited sharing the health records of substance abusers and was found not to create a private right. As in those cases, § 2243 "express[es] prohibitions rather than personal entitlements and specify a particular remedy other than civil litigation," and thus is a "poor candidate[] for the imputation of private rights of action." *Chapa*, 168 F.3d at 1038; *see also Ellison*, 63 F.3d at 471 ("[C]ourts are 'especially reluctant' to recognize additional remedies where a

42

statute expressly provides a remedy." (*quoting Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979)). The mandatory restitution provision for violations of § 2243 envisions a court-ordered remedy as part of the criminal process, expressly independent of civil awards the plaintiff might obtain. 18 U.S.C. § 2248(a).

For these reasons, I recommend granting Defendants' motion to dismiss the § 2243 claim.

The second statute Plaintiff cites is the Prison Rape Elimination Act (PREA), specifically 34 U.S.C. § 30301(13). (ECF No. 1, PageID.14.) It is not entirely clear that Plaintiff means to rely on the statute as the basis for a separate claim but, out of an abundance of caution, I will assume it is an additional claim. The subsection cited is merely part of the statement of congressional findings noting that "[t]he high incidence of sexual assault within prisons involves actual and potential violations of the United States Constitution." 34 U.S.C. § 30301(13). The subsection goes on to discuss the Eighth Amendment, which Plaintiff also cites in his discussion of the statute. (ECF No. 1, PageID.14.) The subsection ends by warning that States which "do not take basic steps to abate prison rape . . . . are not entitled to the same level of Federal benefits as other States." 34 U.S.C. § 30301(13).

Whatever Plaintiff's intention in citing this provision, the statute does not provide private rights enforceable via § 1983. The specific subsection at issue does not prohibit any conduct or provide any entitlements. It addresses the federal-state relationship rather than individual rights. Moreover, "[n]umerous Courts . . . have determined that the PREA provides no private right of action to individual prisoners." *Peterson v. Burris*, 2016 WL

43

67528, at *2 (E.D. Mich. Jan. 6, 2016) (collecting cases). Consequently, Plaintiff therefore cannot state a claim under this statute.

Defendants have not sought dismissal of this claim. But for the reasons above, the claim cannot be brought. Therefore, rather than letting the claim, a clear loser, linger in the case, I recommend *sua sponte* dismissing it under 28 U.S.C. § 1915(e)(2)(B)(ii) because it fails to state a legal basis for relief.

### H.    Injunctive and Declaratory Relief and State-Law Claims

Defendants have two final arguments. The first seeks dismissal of Plaintiff's claim for injunctive relief, arguing it is moot because he has been transferred to a different correctional facility. (ECF No. 20, PageID.91.) Plaintiff's complaint requests injunctions ordering Norman to stop sexually abusing inmates, requiring Osier to investigate all written or verbal grievances from inmates, and mandating installation of security cameras in the pantry where Plaintiff was assaulted. (ECF. No. 1, PageID.16.) Plaintiff does not deny that he no longer resides at the Facility and, indeed, his complaint states that he is confined at a different institution. (ECF No. 1, PageID.1.) "The Sixth Circuit has held that where an inmate is no longer confined to the institution that inflicted the alleged wrong, any claims for declaratory or injunctive relief are rendered moot." *Woods v. Najar*, 2015 WL 1182316, at *2 (E.D. Mich. Mar. 13, 2015); *see also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (noting that the plaintiff's requests for injunctive and declaratory relief were moot because they were specific to a facility from which he had been transferred); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("However, to the extent Kensu seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution

44

that searched his mail."). Thus, Plaintiff's request for injunctions is moot. And while Defendants cite the law above on the mootness of declaratory relief in these circumstances, they have not asked to dismiss Plaintiff's claim for that relief. But because the law is clear that this claim is moot, I suggest the Court *sua sponte* dismiss it under 28 U.S.C. § 1915(e)(2)(B)(ii).

Defendants also ask the Court to decline exercising supplemental jurisdiction over Plaintiff's state-law claims. (ECF No. 20, PageID.92-93.) I recommended above dismissing Plaintiff's IIED claim under 42 U.S.C. § 1997e(e) because it is based purely on emotional damages and no physical injury has been shown. However, in the event that that claim or any other state-law claim survives,[12] I will address Defendants' argument.

They offer two reasons for doing so: (1) Plaintiff's complaint fails to state facts supporting the legal elements of these claims; and (2) Plaintiff's federal claims should be dismissed, leaving only the state-law claims. (*Id.*) Under 28 U.S.C. § 1367(c), a court *may* decline exercising supplemental jurisdiction if the state-law issue is novel or complex, the issue predominates over the federal claims, the court "has dismissed all claims over which it has original jurisdiction," or "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." None of these circumstances are present here. Federal claims remain in the case and the state-law claims are not novel or complex nor do they predominate. Defendants' suggestion that the claims will fail on the merits is not an

---

[12] Defendants discern claims for IIED and invasion of privacy. (ECF No. 20, PageID.92.) The complaint clearly attempts to state an IIED claim, but I cannot find an invasion-of-privacy claim. Nonetheless, I will assume such a claim is present for purposes of this Report.

exceptional circumstance. Therefore, to the extent state-law claims remain in the case, I recommend rejecting Defendants' argument.

## III.   Conclusion

For the reasons above, I **recommend** that the Court **GRANT Defendants' motion IN PART**, **DENY the motion IN PART**, and *SUA SPONTE* **DISMISS** various claims under 28 U.S.C. § 1915.

## IV.   Review

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to

46

which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  October 17, 2019                     S/ PATRICIA T. MORRIS
                                            Patricia T. Morris
                                            United States Magistrate Judge


## CERTIFICATION

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.  A copy was also sent via First Class Mail to William Poe, Jr. #284033 at Saginaw Correctional Facility, 9625 Pierce Road, Freeland, MI 48623.

Date: October 17, 2019                      By s/ Kristen Castaneda
                                            Case Manager